Filed 3/23/15  P. v. Cortez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANGEL RUBEN CORTEZ,<br><br>    Defendant and Appellant. | D064847<br><br><br>(Super. Ct. No. SCS258905) |

APPEAL from a judgment of the Superior Court of San Diego County, Ana L. España, Judge. Affirmed.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Randal Einhorn and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Angel Ruben Cortez not guilty of attempted murder, but guilty of assault with a deadly weapon and evading an officer with reckless driving. The jury

found true a great bodily injury enhancement attached to the assault crime and Cortez later admitted two prison prior allegations. The trial court sentenced Cortez to a total term of eleven years, 8 months in prison. Cortez appeals, contending the trial court erred by consolidating the attempted murder and assault charges with the evading crime that occurred on an earlier date because the statutory requirements of Penal Code section 954 for joinder were not met, and even if these requirements were satisfied, there was a clear showing of prejudice. (Undesignated statutory references are to the Penal Code.) We conclude the trial court erred in joining the charges, but find the error was not prejudicial. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*First Incident*

In May 2012, a Chula Vista Police Department detective and his partner were on patrol when they observed a Chevrolet Impala, driven by Cortez, commit a traffic violation by changing lanes without signaling. The detective activated the lights and siren of the patrol car to conduct a traffic stop. Cortez continued driving and committed a number of traffic violations, including driving through two stop signs, speeding, and driving through two red lights. Eventually, Cortez pulled over and was taken into custody.

*Second Incident*

On an evening in June 2012, Yolanda Gonzalez went to a bar with a friend. Gonzalez recognized several people at the bar, including Gilberto "Gilbert" Zamora, an acquaintance. Cortez, whom Gonzalez had never met before, pulled Gonzalez's hair as

2

he walked into the bar. While Gonzalez was on the dance floor, Cortez pointed at his eyes with his index and middle fingers and then pointed at Gonzalez. While Gonzalez was dancing, she had left her cellular phone unattended; when she returned after dancing, her phone was missing. One of Gonzalez's friends, Tony, went outside the bar and inquired about Gonzalez's phone. Tony was just outside the front door when Gonzalez saw two people punch him in the face. After Tony fell, Gonzalez went outside to help him.

Meanwhile, Zamora noticed the fight and went outside to help Gonzalez because she appeared to be in trouble. Gonzalez saw Cortez pull out a knife and run toward her with his arm extended. After Zamora moved Gonzalez out of Cortez's way, Cortez stabbed Zamora. Gonzalez believed Cortez was trying to stab her, and Zamora believed that if he had not moved Gonzalez, Cortez would have stabbed her instead. Zamora suffered a potentially life threatening abdominal stab wound that required surgery.

*Instant Proceedings*

Before trial, the People moved to consolidate the evading an officer case with the attempted murder and assault case. The trial court granted the motion, finding that combining the cases would not be prejudicial as the evading case would not be used improperly to determine the mens rea for attempted murder, a specific intent crime. Before deliberation, the court instructed the jury with CALCRIM No. 3515 that stated, "Each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one . . . ."

3

DISCUSSION

"'The law prefers consolidation of charges.'"  (*People v. Manriquez* (2005) 37 Cal.4th 547, 574.)  Charges may be consolidated under two circumstances:  (1) when they are connected together in their commission; or (2) when they are of the same class of crimes.  (§ 954.)  Offenses are of the same class of crimes or offenses if they "possess common characteristics or attributes."  (*People v. Moore* (1986) 185 Cal.App.3d 1005, 1012.)  Offenses are connected in their commission if there is a common element of substantial importance in their commission, including the intent or motivation with which different acts are committed.  (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1219.)  Whether offenses were properly joined under section 954 is a question of law and is subject to independent review on appeal; the decision whether separate proceedings are required in the interests of justice is reviewed for an abuse of discretion.  (*People v. Alvarez* (1996) 14 Cal.4th 155, 188.)

Cortez claims joinder was not statutorily authorized because the crimes were not of the same class and were not linked in their commission by a common element of substantial importance.  He asserts we should reject the argument that all of his crimes displayed a conscious disregard for life as this is not a common characteristic or attribute of the joined crimes.  Even assuming joinder was statutorily authorized, Cortez claims the trial court abused its discretion by granting the prosecution's motion.

The Attorney General does not argue the crimes were connected together in their commission; accordingly, we focus our discussion on whether the charges were of the same class of crimes.  On this point, the trial court found the crimes involved "wanton

4

disregard."  The Attorney General asserts the crime of evading an officer with reckless driving is in the same class of offenses as attempted murder/assault because all crimes were against the person and involved acting with disregard for life.  Cortez claims a disregard for life is not a common characteristic or attribute of the joined crimes.  We agree with Cortez.

"[S]ection 954 permits joinder of all assaultive crimes against the person, all of them being considered 'of the same class.'"  (*Coleman v. Superior Court* (1981) 116 Cal.App.3d 129, 135.)  Subdivision (a) of Vehicle Code section 2800.2 makes it a crime to flee or attempt to elude a pursuing peace officer in violation of Vehicle Code section 2800.1 if "the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property."  Because a violation of Vehicle Code section 2800.2 can occur where there is willful or wanton disregard for either the safety of persons *or property*, we conclude this crime does not qualify as an assaultive crime against the person.

Where two cases are erroneously consolidated for trial, "a reversal will not be had unless there is such a miscarriage of justice as would violate article VI," section 13 of the California Constitution.  (*People v. Saldana* (1965) 233 Cal.App.2d 24, 30-31; see generally *United States v. Lane* (1986) 474 U.S. 438, 446, fn. 8 ["[M]isjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."].)  "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more

5

favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Cortez claims the misjoinder severely prejudiced him because it likely led the jury to determine that if he was the kind of person who would recklessly drive to evade police that he would likely also be willing to stab a person. We disagree. Based upon the strength of the People's evidence, we conclude the misjoinder did not amount to a miscarriage of justice.

Cortez does not dispute that the detective's testimony overwhelmingly established he evaded police with wanton disregard for safety so as to show a violation of Vehicle Code section 2800.2. The evidence relating to the assault charge was equally strong. Zamora made eye contact with Cortez when Cortez walked into the bar. Zamora saw Cortez's face after Cortez stabbed him. About a month after the stabbing, Zamora saw Cortez and recognized the tattoo on the back of Cortez's head. Zamora followed Cortez to an apartment complex and then called a detective.

Based on the description and address, the detective believed Cortez was a possible suspect. Research of law enforcement databases revealed that Cortez's tattoo was "very specific" and "unique." The detective was not aware of anybody else with a similar tattoo. Zamora later identified Cortez from a photographic lineup, noting that Cortez's eyes "stood out to him." When he was shown a photograph of Cortez's tattoo, Zamora confirmed it was the tattoo he had seen on his assailant's head. Given this testimony, it is highly unlikely that any doubts the jury may have had about the identity of Zamora's assailant was influenced by joinder of the less inflammatory evading offense.

6

The facts of the assault and evading offenses were also factually separable and distinct; thus, lessening the likelihood of jury confusion. The jury would have been able to "compartmentalize the evidence presented in the two cases," thereby insuring that there would be "no improper spillover effect" or gross unfairness by the joinder of the charges. (*People v. Soper* (2009) 45 Cal.4th 759, 784.) During closing argument, the prosecution separately discussed the two incidents. Moreover, Cortez conceded his guilt on the evading charge during closing argument stating, "[W]e're not really here to dispute that" and the case was "mainly about the stabbing." Finally, the trial court instructed the jury with CALCRIM No. 3515, stating each count must be considered separately.

It is not reasonably probable the misjoinder affected the jury's verdict or that Cortez would have obtained a more favorable result had the counts been severed. Thus, Cortez's constitutional right to a fair trial was not violated by the misjoinder.

DISPOSITION

The judgment is affirmed.

MCINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

7