Filed 6/11/25  P. v. Shannon CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JUSTIN BUCK SHANNON,<br><br>        Defendant and Appellant. | C099895<br><br>(Super. Ct. No.<br>SCCR-CRF-2021-545) |

A jury found defendant Justin Buck Shannon guilty of 13 sex offenses involving three victims.  On appeal, defendant contends the evidence was insufficient to prove one of those convictions—rape of an unconscious person—and asserts the trial court should have severed that charge, which involved an adult victim, in a case where the other charges involved minor victims.  We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

By the time of trial, Doe 1 had passed away, leaving her mother and a bartender to testify about the events of the evening. When Doe 1 was 22 years old, she went out one afternoon with defendant, her friend, and her mother. The four met at a bar for about an hour and each had a single drink, although the bartender recalled seeing them drink "quite a bit of alcohol." The bartender saw defendant and Doe 1 flirting and holding hands, but not kissing. After dropping off the friend at her house, Doe 1, her mother, and defendant went to defendant's house where they stayed for several hours. During that time, defendant made the group food and Doe 1's mother saw defendant and Doe 1 drink two shots of whiskey. Between 8:00 p.m. and 9:00 p.m., Doe 1's mother went home, with the understanding that Doe 1 would be coming home later that night. When Doe 1's mother left, Doe 1 appeared to have a slight buzz but neither Doe 1 nor defendant appeared drunk.

Instead of going home that night, Doe 1 returned home the next morning at approximately 9:30 a.m. Doe 1 looked hungover and sluggish. Doe 1 said she was not hungover and did not want to talk with her mother. Doe 1 curled up on the floor and cried for several hours. Doe 1 then told her mother she had one more drink with defendant after her mother left and did not remember anything that happened after the drink. Doe 1 said she woke up the next morning in defendant's bed without clothes on below the waist.

Doe 1 went to the police station and reported a sexual assault. When interviewed by police, defendant said Doe 1 was extremely drunk and had passed out on his bed "and apparently woke up with her fuckin' pants off." He also said he did not remember much of the night because he was drunk and that he and Doe 1 may have had sex. Defendant acknowledged it would have been inappropriate for him to have sex with an intoxicated person even if he was also intoxicated. Defendant's sperm and DNA were detected as a contributor to the DNA mixture present on the crotch of Doe 1's underwear.

2

Doe 2 was a seven-year-old girl whom defendant babysat while her mother worked two jobs. On four occasions defendant had sexual intercourse with her, after which he always gave her candy and once threatened to kill her mother if she told anyone about his conduct. Evidence proving the charges was predominantly presented through the testimony of Doe 2, who was 16 years old at the time of testimony, detailing the four instances of intercourse, and her mother and brother, to whom she disclosed the conduct.

Doe 3 was a 17-year-old girl who was involved in a dating relationship with defendant, who is between 10 and 11 years older than her. During that time, they had sexual intercourse several times and Doe 3 performed oral copulation on defendant at least twice. Evidence proving the charges was presented predominantly through the testimony of Doe 3 and her mother.

Before trial, the prosecution brought a motion to consolidate the case involving Doe 1 and Doe 2 with the case involving Doe 3. The trial court noted the defense did not file a written opposition to the motion to consolidate and thus the court could not assess the prejudice of consolidation. The defense responded that it opposed the motion and anticipated filing a motion to sever at a later date. The court granted the prosecution's motion to consolidate because all the charges were of the same class and consolidation would promote judicial economy.

During motions in limine discussions, the trial court noted the defense never moved to sever any of defendant's charges but instead filed a motion in limine for "bifurcation of trial (counts [one] [*sic*] from counts [two] through [nine] [involving Doe 2])." (Capitalization & underscoring omitted.) The court impliedly denied the motion on procedural grounds. The court later prohibited the prosecution from arguing under Evidence Code section 1108 that defendant had the propensity to commit sex offenses based on proof of the charged acts. The court ruled against using the charged acts as propensity evidence because the standard to do so, i.e., preponderance of the evidence, would have confused the jury when it also had to apply the reasonable doubt

3

standard to convict defendant of those same offenses. It further believed section 1108's application was inappropriate because the consolidated cases involved different charges, victims, and circumstances. However, the court permitted the prosecution to make a propensity argument based on a juvenile adjudication sustained against defendant and only pertaining to the crimes against Doe 2.

As it pertained to Doe 1, the jury found defendant guilty of rape of an unconscious person. As it pertained to Doe 2, it found defendant guilty of four counts of sexual intercourse with a child under 10 years old and four counts of forcible lewd acts on a child under 14 years old, the latter of which the jury found true allegations that defendant's conduct included substantial sexual conduct. As it pertained to Doe 3, the jury found defendant guilty of two counts of sexual penetration of a person under 18 years old and two counts of oral copulation of a person under 18 years old. The trial court sentenced defendant to 100 years to life, plus 13 years.

Defendant appeals.

## DISCUSSION

### I

*Sufficient Evidence Supports The Jury's Finding That Defendant*
*Had Sexual Intercourse With Doe 1 When She Was Unwilling*

Defendant contends the evidence did not support a reasonable inference that he and Doe 1 had sexual intercourse or that Doe 1 was too intoxicated to consent to intercourse. We disagree.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of

4

fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]  In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Edwards* (2013) 57 Cal.4th 658, 715, italics omitted.)

Substantial evidence includes circumstantial evidence and the reasonable inferences that may be drawn from it, and such evidence is as sufficient as direct evidence to support a verdict.  (*People v. Brown* (2014) 59 Cal.4th 86, 105-106.)  "Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding."  (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.)  "We discard evidence that does not support the judgment as having been rejected by the trier of fact for lack of sufficient verity."  (*People v. Moore* (2010) 187 Cal.App.4th 937, 940.)

The crime of rape of an unconscious person requires proof of (1) an act of sexual intercourse, (2) where the victim "is at the time unconscious of the nature of the act," and (3) "this is known" by the defendant.  (Pen. Code,[1] § 261, subd. (a)(4).)  "Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis."  (CALCRIM No. 1002, italics omitted.)  " '[P]enetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina.' " (*People v. Paz* (2017) 10 Cal.App.5th 1023, 1037.)

Doe 1 did not remember having sexual intercourse with defendant.  Despite this, the evidence demonstrated Doe 1 woke up in defendant's bed without clothing from the waist down and defendant's sperm was present on the crotch of her underwear when she gave it to police for testing.  It is a reasonable inference that defendant's sperm was

---

[1]     Further undesignated section references are to the Penal Code.

5

transferred from Doe 1's genitalia to her underwear when she woke up and put on her underwear before returning home. It is also reasonable that defendant's sperm was present on Doe 1's genitalia because defendant penetrated her genitalia until he ejaculated. Given the reasonable inference that defendant penetrated Doe 1's vagina, which accounted for the presence of his sperm, sufficient evidence exists to support the jury's finding that defendant had sexual intercourse with Doe 1.

Defendant disagrees, arguing the evidence informed two reasonable inferences—one pointing to sexual penetration and the other pointing to defendant's ejaculation onto Doe 1's underwear. Because both inferences are reasonable, the argument continues, the jury was required to adopt the inference that pointed towards acquittal. While defendant is correct that " ' "it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence" ' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87), once the jury has decided that the defendant is guilty beyond a reasonable doubt, the reviewing court may not reweigh the evidence or reevaluate the credibility of witnesses (*People v. Jacobo* (2019) 37 Cal.App.5th 32, 42). " 'Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal.' " (*Manibusan*, at p. 87.) It is through this lens that we evaluate whether the direct and circumstantial evidence presented at trial reasonably justified the jury's conclusion defendant had intercourse with Doe 1, and we conclude it does.

For a defendant to be convicted of rape of an unconscious person (§ 261, subd. (a)(3)), in addition to sexual intercourse, the victim's level of intoxication must "be such that the victim is incapable of exercising the judgment required to decide whether to consent to intercourse." (*People v. Giardino* (2000) 82 Cal.App.4th 454, 464.) "It is settled that a victim need not be totally and physically unconscious." (*People v. Ogunmala* (1987) 193 Cal.App.3d 274, 279.) Rather, the statutory language uses the

6

phrase "unconscious of the nature of the act" to mean "incapable of resisting because the victim [¶] . . . [w]as unconscious or asleep . . . [¶] [or w]as not aware, knowing, or cognizant that the act occurred." (§ 261, subd. (a)(4).) "One who is unconscious as defined in section 261, subdivision (a)(4), necessarily does not act freely and voluntarily with knowledge of the nature of the act." (*People v. Morales* (2013) 212 Cal.App.4th 583, 591.)

Doe 1's mother testified Doe 1 was not intoxicated when she left defendant's house between 8:00 p.m. and 9:00 p.m. She further testified that, the next morning, Doe 1 told her Doe 1 had one drink after her mother left and did not remember anything afterward. Defendant told a police officer Doe 1 was extremely intoxicated that night, passed out on his bed, and that he may have had sex with her. Taken together, the evidence supports the reasonable conclusion that Doe 1 was unconscious, or otherwise incapable of providing consent, after having a drink with defendant and during the time defendant had sexual intercourse with her.

Defendant disagrees, arguing the record includes only speculation tending to show Doe 1 failed to consent to intercourse or was too intoxicated to consent to intercourse. We disagree. Defendant's own statements describing Doe 1's level of intoxication and that Doe 1 had passed out on his bed, as well as Doe 1's mother's testimony as to Doe 1's statements the morning after the rape, provided evidence that is reasonable, credible, and of solid value that Doe 1 was unconscious at the time defendant had intercourse with her. Accordingly, sufficient evidence supports defendant's conviction for rape of an intoxicated person.

II

*The Trial Court Did Not Abuse Its Discretion By Refusing To Sever Count One*

Defendant contends the trial court erred by refusing to sever the charge involving Doe 1 from the remaining charges. Defendant acknowledges his counsel did not file a formal motion to sever or oppose the prosecution's motion to consolidate beyond stating

7

a general opposition during argument on the motion to consolidate. Defendant argues him seeking bifurcation in his motions in limine, which were filed before the prosecution consolidated the case involving Doe 1 and Doe 2 with the case involving Doe 3, preserved this issue for appeal. The People assert the trial court ruled on the construed motion to sever and did not abuse its discretion by denying it. We will presume defendant preserved the issue with the filing of the motion to bifurcate contained in his motions in limine and will address the merits of defendant's claim.[2]

We review decisions on motions to sever properly joined charges for an abuse of discretion, considering the record before the trial court at the time it ruled. (*People v. Simon* (2016) 1 Cal.5th 98, 122-123 (*Simon*).) " 'An abuse of discretion may be found when the trial court's ruling " 'falls outside the bounds of reason.' " ' " (*People v. Carter* (2005) 36 Cal.4th 1114, 1153.)

"Section 954 allows for the joint trial of 'two or more different offenses connected together in their commission . . . or two or more different offenses of the same class of crimes or offenses.' " (*People v. Hin* (2025) 17 Cal.5th 401, 438.) For purposes of section 954, criminal offenses are "of the same class," and thus subject to joinder, when

---

[2]    Defendant also argues his general opposition to the prosecution's motion to consolidate preserved the contention the trial court should have severed the charge involving Doe 1 from the remaining charges. Not so. In the prosecution's motion to consolidate, it sought consolidation of the charges involving Doe 3. Defendant does not assert on appeal those charges should not have been consolidated. Thus, defendant's opposition to the prosecution's motion to consolidate the charges involving Doe 3 does not serve to preserve the issue that the charge involving Doe 1 should be severed. Moreover, the trial court's discretion is reviewed in light of what it knew at the time of the motion. (*People v. Ybarra* (2016) 245 Cal.App.4th 1420, 1436.) At the time of the motion, defendant did not present an argument regarding the prejudice of consolidating the charges involving Doe 3. Defendant's motion in limine to bifurcate the charge involving Doe 1 from the charges involving Doe 2 only argued there was prejudice regarding those charges. Thus, defendant cannot meet his burden of showing the trial court abused its discretion by consolidating the charges involving Doe 3 with the charges involving Doe 1 and Doe 2.

8

they share common characteristics or attributes. (*People v. Landry* (2016) 2 Cal.5th 52, 76.) Defendant concedes that all the crimes charged in the information are properly joined under section 954. Indeed, sex crimes are typically considered of the same class. (*People v. Ochoa* (1998) 19 Cal.4th 353, 409; see *People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1112-1113.) Thus, we conclude joinder was proper under section 954 because all the charged crimes were sex offenses.

"Where joinder is proper under section 954, '[t]he burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried.' [Citation.] In determining whether a court abused its discretion in declining to sever properly joined charges, we first 'consider the cross-admissibility of the evidence in hypothetical separate trials.' [Citation.] If the evidence is cross-admissible, then this 'is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges.' [Citation.] If not, then we also consider '(1) whether some of the charges are particularly likely to inflame the jury against the defendant; (2) whether a weak case has been joined with a strong case or another weak case so that the totality of the evidence may alter the outcome as to some or all of the charges; or (3) whether one of the charges (but not another) is a capital offense, or the joinder of the charges converts the matter into a capital case.' " (*People v. Hin*, *supra*, 17 Cal.5th at pp. 438-439.)

Turning first to the threshold issue of cross-admissibility, this element requires us to "consider the cross-admissibility of the evidence in hypothetical separate trials." (*People v. Soper* (2009) 45 Cal.4th 759, 774.) " '[T]he issue of cross-admissibility "is not cross-admissibility of the charged offenses but rather the admissibility of relevant evidence" that tends to prove a disputed fact.' " (*People v. Capistrano* (2014) 59 Cal.4th 830, 849, overruled on another ground in *People v. Hardy* (2018) 5 Cal.5th 56, 103-104.) The evidence underlying the crimes charged here was not common among the victims and did not require the testimony of the same witness, thus the evidence was not cross-

9

admissible.  Accordingly, we will turn to the other factors to assess whether the trial court abused its discretion.

As a preliminary matter, we note this is not a death penalty case, thus this consideration is inapplicable.

As to whether the consolidated charges would have inflamed the jury, "the animating concern underlying this factor is not merely whether evidence from one offense is repulsive, because repulsion alone does not necessarily engender undue prejudice.  [Citation.]  Rather the issue is 'whether " 'strong evidence of a lesser but inflammatory crime might be used to bolster a weak prosecution case' on another crime." ' "  (*Simon*, *supra*, 1 Cal.5th at p. 124.)

Here, the inflammatory crimes, i.e., those against Doe 2, were not less serious crimes when compared to the crime committed against Doe 1.  We note, however, that "sex crimes can be quite inflammatory, especially when they involve young victims," but the danger that the jury will transfer its outrage arising from a highly inflammatory charge to a less inflammatory one is not present when all charges are equally inflammatory.  (*Simon*, *supra*, 1 Cal.5th at p. 124; see *People v. Marshall* (1997) 15 Cal.4th 1, 28.)  The charges involving Doe 1 and Doe 2 involved defendant taking advantage of vulnerable female victims who were incapable of resisting his criminal conduct.  While sex crimes involving children under 10 years of age like Doe 2 could inflame a jury more than a charge involving an adult like Doe 1, all these crimes were reprehensible and of a sexual nature that may inflame a jury.  Further, the evidence presented to prove the crimes involving Doe 2 was not particularly inflammatory.  The offenses against Doe 2 were proven by testimonial evidence, and Doe 2 was no longer under 10 years old at the time of her testimony and was instead 16 years old.  The crimes against Doe 2 did not involve physical injury beyond the intercourse itself and no photos or sexual assault exam were admitted in evidence to inflame the jury.  Nevertheless, any doubt to the inflammatory nature of the charges regarding Doe 2 as prejudicing defendant

10

is dispelled because they were "supported by strong evidence" as we discuss more fully immediately below. (*Simon*, at p. 125.)

The record does not reveal the prosecution joined a weak case with a strong case. "The core prejudice concern arising in connection with this issue is that jurors may aggregate evidence and convict on weak charges that might not merit conviction in separate trials. [Citation.] This concern is especially pronounced when evidence of a lesser but inflammatory incident might be used to bolster a weak prosecution case as to another incident. [Citation.] But even where evidence from one incident could be considered 'inflammatory' as the term is understood in our case law [citation], we will find no abuse of discretion if the evidence of guilt for each of the joined incidents is sufficiently compelling." (*Simon*, *supra*, 1 Cal.5th at p. 127.) "In any event, as between any two charges, it always is possible to point to individual aspects of one case and argue that one is stronger than the other." (*People v. Soper*, *supra*, 45 Cal.4th at p. 781.) A "mere imbalance" in the strength of joined cases does not automatically trigger the possibility of prejudicial " 'spillover' " of evidence. (*Ibid*.)

Evidence supporting the charges for Doe 2 consisted of direct evidence, which included Doe 2's testimony and testimony about her prior disclosures to her family members. When comparing this evidence with the evidence predicating the charge for Doe 1, defendant argues the evidence supporting this charge is weaker because it relies "entirely on circumstantial evidence involving a non-testifying complaining witness." Not so. DNA evidence of defendant's semen was found in the crotch area of Doe 1's underwear after the night of the incident. DNA evidence of defendant's semen indicates a strong case. (See *Simon*, *supra*, 1 Cal.5th at p. 127 [holding there was no joinder of a weak case with a strong case because the most damaging piece of evidence was the defendant's DNA profile matching the DNA profile of semen from the murder victim's body and clothing].) Further, defendant's statements to police tended to confirm Doe 1's claims she could not consent to sexual intercourse and that defendant actually had sexual

11

intercourse with her. Thus, while the evidence may be of a different type, neither case is significantly weaker than the other. Accordingly, we conclude there is no showing of potential prejudice under the factors considering the inflammatory nature of the evidence or relative strength of the cases.

Defendant disagrees, citing *Coleman v. Superior Court* (1981) 116 Cal.App.3d 129, 139. *Coleman* is inapposite. There the appellate court concluded the refusal to sever a murder charge from charges of sex crimes against minors was an abuse of discretion because the evidence was not cross-admissible, the murder case involved a capital charge, the sex offense charges committed against the children "ha[d] a very serious prejudicial effect upon a jury," and "the evidence in support of the charges involving [the murder victim] appear[ed] to be of less force than that in support of the charges involving the children." (*Id.* at pp. 139-140.)

In the present case as opposed to *Coleman*, the charges involving Doe 2 were not used to bolster a capital case and the evidence for Doe 1 and Doe 2 were supported by comparably strong evidence. In *Coleman*, the only evidence that connected defendant to the murder charge was palm and thumb prints found at the scene of the crime. (*Coleman v. Superior Court*, *supra*, 116 Cal.App.3d at p. 138.) In contrast, as described, there is substantially more evidence supporting the charge pertaining to Doe 1 than just DNA evidence, like the testimony surrounding the event and defendant's statements. Moreover, "[u]nlike in *Coleman*, where the joinder of inflammatory evidence was used to bolster a more serious—but weaker—case," the Doe 2 charges carried the harsher penalty and cannot be characterized as the lesser crime. (*Simon*, *supra*, 1 Cal.5th at p. 125.) Accordingly, the trial court did not abuse its discretion by denying defendant's motion to sever at the time the motion was made.

"Even if we find that the trial court did not abuse its discretion in denying severance pretrial, we must also determine 'whether events after the court's ruling demonstrate that joinder actually resulted in "gross unfairness" amounting to a denial of

12

defendant's constitutional right to fair trial or due process of law.' . . . [¶] In determining whether joinder resulted in gross unfairness, we have observed that a judgment will be reversed on this ground only if it is reasonably probable that the jury was influenced by the joinder in its verdict of guilt." (*Simon*, *supra*, 1 Cal.5th at pp. 129-130, italics omitted.) "Defendant has the burden to establish gross unfairness, a burden our Supreme Court has characterized as a 'high burden.' " (*People v. Ybarra*, *supra*, 245 Cal.App.4th at p. 1438; accord *People v. Soper*, *supra*, 45 Cal.4th at p. 783.)

Defendant argues improper joinder did result in gross unfairness that amounted to a denial of his due process rights under the United States Constitution but fails to point to evidence in the record to support this. (See *People v. Dougherty* (1982) 138 Cal.App.3d 278, 282 [contentions without factual underpinnings, record references, argument, and/or authority are deemed to be without foundation and require no discussion].) In any event, we disagree. The evidence for both cases was comparably strong as discussed, the trial court instructed the jury to consider the counts charged separately, and the prosecutor did not improperly urge the jury to draw impermissible inferences. (See *Simon*, *supra*, 1 Cal.5th at p. 130.) Defendant has not met his burden of demonstrating the jury was influenced by the joinder in its verdicts.

Accordingly, we hold the trial court did not abuse its discretion, nor did it deny defendant due process under the United States Constitution when it denied defendant's motion to sever count one from the remaining charges.

## DISPOSITION

The judgment is affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
RENNER, J.

/s/
MESIWALA, J.